## INJURY FROM OPERATING AN OIL PUMP.

[Circuit Court of Wood County.]

### DAVID W. BOWE v. CHARLES F. BOWE.

Decided, April Term, 1903.

*Negligence—Operation of Machinery by an Inexperienced Minor—Evidence as to Experience Required—Damages—Physician's Bill not an Element ·of, When—Nor are Services of Mother as Nurse, When—Nor Wages Lost, When—Immaterial Questions Prejudicial, When—Charge of Court.*

1. In a suit for damages for personal injuries resulting from an employer's negligence in permitting inexperienced plaintiff to perform a certain act in connection with the pumping ·of an oil well, the admission of questions as to the length of time it would require .one of ordinary intelligence to acquire sufficient experience to pump a well with safety, etc., is error. Such questions are not only indefinite in meaning, but are too broad in application; they should have been directed to the particular act, which might in fact have required little or no experience.

2. A charge to the jury in a suit for personal injuries caused by defendant's negligence, that they should consider physician's charges in making up the amount of damages, when it appears that defendant paid the bill, and plaintiff incurred no liability therefor, is improper.

3. In such case, the plaintiff can not recover for the value of the services of his mother as nurse, in the absence of a special contract between them, or proof of his manumission.

4. Under such circumstances, a charge which submits to the jury the consideration of the question' of the length of time plaintiff had been earning wages, where it appears that plaintiff had not been emancipated, and that, therefore, his time belonged to his parents, is improper.

5. Under the above facts the admission of questions as to whether defendant employed "child labor," concerning his financial responsibility, as to subsequent promises of employment made to plaintiff, as to his conduct toward plaintiff, etc., is prejudicial to defendant, and is error.

PARKER, J. (orally) ; HAYNES, J., concurs.

The action in the court below was by Charles F. Bowe against David W. Bowe, an action in which he charged the defendant below, as his employer, with negligence in furnishing him with

unsafe and improper machinery and appliances to work with, and putting him at a dangerous occupation without warning him of the dangers incident thereto, he, the plaintiff, it is said, being a youth and inexperienced in that kind of work. The trial resulted in a verdict in favor of the plaintiff below for $3,500. A motion for a new trial was overruled and judgment entered upon the verdict. Error is alleged in the action of the court in overruling the motion for a new trial, and in various matters upon the trial of the case.

It is charged in the petition, in substance, that the defendant, David W. Bowe, being the owner of a farm upon which oil wells have been drilled by him, and which he was operating, employed plaintiff and put him to work as a pumper; that one of the wells, No. 9, was not properly equipped; that is to say, that a certain part of the apparatus called the adjuster rod was too long, and that it was connected with another appliance called a "Dix grip," so that in the ordinary operation of pumping the well it became unscrewed, and that one of the results of this unscrewing of the Dix grip from this too lengthy adjuster rod, was that the Dix grip would fall or be carried downward, and being connected by the rods to which it was fastened, the Dix grip would strike upon a certain other part of the apparatus called the stuffing box; whereas if it had been properly adjusted it would not have struck upon this stuffing box but would have remained above it. It is also said that one of the duties of the plaintiff below was to turn the rods in the well; that it became necessary to do this every day, and that the proper apparatus for turning rods was either a wrench or "Crombie" tongs; that he was not furnished a wrench or Crombie tongs, but that he was furnished with a stick and rope and instructed to use those in the operation, and that those were not safe nor proper appliances; also, that in this operation of turning the rods by the use of the rope and stick, the plaintiff below was required to or would naturally put his hand upon a part of the apparatus called a polish rod, or upon the lower part of the Dix grip near the polish rod, and that while he was carrying on this operation with a stick and rope with his hand upon the lower part of the Dix grip near to or upon the

polish rod, the Dix grip became unscrewed from the adjuster pipe, the weight of the rods in the well carried the Dix grip down to and upon the stuffing box, and his right hand being in the position described, was caught between the Dix grip and the stuffing box in such a way as to lacerate it and sever the thumb and some of the fingers.

It is said that he was young and inexperienced and did not know that he was required to work with an unsafe appliance, and did not know of the danger of working with this devise, or that it was dangerous for him to use it in the manner required; and the defendant being advised of his inexperience and being aware of these dangers, was guilty of negligence in failing to inform plaintiff and instruct him as to the proper method of doing this work, and the incidental dangers.

All this alleged negligence is denied by the defendant below. It is denied that the appliances furnished were unsafe or improper and that the connection and adjustment of the apparatus was wrong, and it is averred that the plaintiff's injury came about from his own negligence contributing directly thereto.

It appears that the plaintiff was nearly eighteen years old at the time of the accident. How long he had been working at operations of this kind is somewhat uncertain, but it was somewhere between two and five months. On the occasion in question he was working by himself, having no overseer or instructor. It does not appear that he had ever before turned rods by the use of a rope and stick, but that part of the case may be as well be disposed of at once, and it can be done in a very few words. We find that it is very clear from the evidence that the rope and stick are as proper and safe an appliance as either the Crombie tongs or a wrench. We find that any verdict of the jury based upon a finding that it was not as safe as either of the others, would not be supported by the evidence.

That leaves for consideration the question of the alleged improper adjustment of the machinery and the alleged failure to warn the plaintiff below of latent dangers incident to the employment, even if that adjustment and appliance were proper, he being, as alleged, young and inexperienced.

A great many witnesses were called on behalf of the plaintiff, and these were met by witnesses called on behalf of the defend-

ant, to testify as experts upon various subjects connected with oil operations, as to the proper appliances and proper adjustments thereof; proper modes of operation, etc., and among other things asked of those so-called expert witnesses was a question respecting the length of time that one must be employed in work of this character in order to become so skillful and experienced as to enable him to do the work with safety. I will read the form of the question as stated in one or two places. It is not varied much. I read from page 79, A. J. Fowler testifying on behalf of the plaintiff is asked the question: "State what in your opinion is the usual and ordinary time required for a person of ordinary intelligence to acquire sufficient experience tò enable him to pump an oil well with safety?" Now with safety to what, or safety to whom is not suggested in this question. Whether it meant with safety to the machinery, or safety to the operator, or with safety to someone else, or something else, is altogether uncertain. The uncertainty is perhaps emphasized as the question is somewhat varied at pages 36 and 37 where there is another impropriety involved in the question in that it is not applied to the kind of apparatus that was in use upon this lease. This is the question: "State what in your opinion is a proper time required for a person of ordinary intelligence to acquire sufficient experience to enable him to pump an oil well with safety when that well is pumped from a power and with a Dix grip attachment on the polish rod and adjusting rod?"

It appears that the wells in this case were not pumped from a power. Now whether that would make any difference or not, whether it would take more or less time, of course we can not say. The answer was: "It would be owing to how smart the man was. Some would not learn as quick as others, but I should think a man ought to have at least six months' experience to be a pumper with safety;" and the answers generally were that it would take from six months to a year; one witness showing that he did not know whether it applied to a question of safety to the machinery or to the operator when he answered that he would not trust his machinery in the hands of a man who had not at least six months' experience.

Now the real question here was on this branch of the case: What if any knowledge had the plaintiff of the defects in the machinery and the danger incident to operating the same, or if youthful and inexperienced, what if any knowledge of the dangers incident to the work at which he was put, independent of any question of defects. In this case the question should be directed to the particular defects alleged, or to the particular work and the dangers incident to that work.

How long it might take a person of ordinary intelligence and of the plaintiff's age to learn to perform all the operations required upon a lease in pumping for oil, we think is too broad a question. How long it might take a person of ordinary intelligence, of the plaintiff's age, to learn the particular part of the duty in which he was engaged at the time he was injured, might do, but the question should not be broader than that. It is somewhat doubtful if this is at all a subject-matter of expert evidence. How can a so-called expert tell how long it will take a person of ordinary intelligence to gain such knowledge. There can be no rule upon it. It depends upon a great variety of circumstances. One person put to work pumping oil wells might learn it the first day and first hour of his employment as fully as if he had been at it six months; I mean the particular part of the work that the plaintiff here was engaged in performing at the time he was injured. On the other hand he might work his full six months and not learn it at all; might not learn a thing about it; indeed he might not be called upon to perform such service until near the end of the period. Such operations might not be carried on upon the lease, or if so, they might be carried on by someone else than him. Now it is apparent that if a person put to work upon an oil lease as a pumper should be required to toggle up the machinery and keep the surface rods in repair; to keep the steam boxes in repair, etc., and in performing that duty, in attempting to drive a nail, should mash his finger, it would be altogether improper, if he were attempting to recover damages from his employer, to ask a person denominated an expert, how long it would take a person on an oil lease working as a pumper to learn all the intricate work incident to that employment. And that was substantially the course pursued here.

According to the testimony of the witnesses, this was a very simple operation; and something which, with proper instruction and observation, a reasonably intelligent person ought to learn in a very short time; and yet witnesses are asked how long it will take a person to become competent as a pumper. We know from common experience, as well as the testimony of witnesses, that some of the duties of a pumper require a knowledge somewhat intimate of machinery and appliances; of the proper firing of the boiler and the proper management and operation of an engine, and a great many things of that sort which are not to be compared of course to some of the simpler, ordinary duties devolving upon a pumper on a lease.

We think this was prejudicial to the defendant below for the reason that it is charged in the petition here that the plaintiff was inexperienced and that he received this injury somewhat through his inexperience, and by these questions and answers the jury are led to the thought and conclusion that a person who has not been upon an oil lease for at least six months is an inexperienced person and is to be so considered by them, while as I say, it is apparent that as far as the particular operation is involved he might be a thoroughly experienced person in a very short time. In fact, some of the plaintiff's own witnesses on cross-examination, testified that a person ought to learn how to perform the particular operation in fifteen minutes.

It appears that after the plaintiff had received this injury he required and had the services of a physician and surgeon, and that the bill of the physician and surgeon was $40, and that this was paid by the defendant; also that the plaintiff incurred no liability and paid nothing, and yet the court submitted to the jury among other things for their consideration in making up the amount of damages resulting to the plaintiff from this injury, the matter of the doctor's bill. There was no evidence in the record authorizing a submission of that item.

Again, it appears that while the boy was disabled, his mother served him as a nurse and helper. The boy was a minor. He was living at home. It does not appear that he incurred any liability to any other person, and he could not incur any liability

to his mother unless the circumstances were very special; unless he had been manumitted or there was some contract between them which was shown. A liability might arise then, but certainly not under circumstances like those appearing here. And yet the court submitted to the jury for their consideration the question of the value of her services and the liability incurred on that account.

Another and still more serious error upon this question of damages, is this: It appears that something like three years intervened between the time the boy received this injury and the time he attained his majority. It does not appear that his time was his own. He was living at home with his father and mother; his time belonged to them, and yet the court submitted to the jury for their consideration the question of the time he had lost, including this period of minority. He had been earning wages at the rate of $2 a day when at work. His time in three years would, if he were steadily employed, bring him therefor the sum of $1,878. If there was nothing else wrong in the case except this doctor's bill; if there was nothing wrong besides his mother's services, which I think it is indicated in the testimony were of the value of $100, the mischief might be obviated by a *remittitur damnum;* but in order to correct the verdict as to this matter of damages due to the supposed loss of earnings, the court would be required to make *remittitur* of the most that the testimony shows he might have earned during that entire period, or $1,878, and that added to the $40 doctor's bill, and the $100 for his mother's services would require a *remittitur* of over $2,000, which might be very unjust to the plaintiff, if he should be entitled to anything. We have never undertaken, and do not know of any case in which a court has undertaken to exercise the authority to require *remittitur* to that extent.

It appears to us also that there was considerable extraneous matter brought before the jury here that was immaterial and should not have been let in and was likely to be prejudicial to the plaintiff in error. He was asked, and required to answer, whether he was not engaged in the employment of "child labor" down there on his lease. The fact had been brought out that he had one boy who had worked for him, and in addi-

tion to this, his own children when not at school. They were not of age, but at what particular employment they were engaged or what they were required to do, the evidence does not advise us. But we think that the court should not have required the defendant to submit to interrogation upon that point. He was not being prosecuted for employing child labor, and the result to the plaintiff below was the same and the liability of the defendant below was the same, whether he had employed child labor or not.

Another matter was the injection of the question of the wealth of the defendant. This was entirely improper. To be sure it was not excepted to, yet we think it proper to make mention of the fact that we regard it as improper, and we think it helps us to see how the result obtained was probably reached or brought about. The plaintiff was entitled to a judgment for as much if the defendant were a pauper as he would be if the defendant were a millionaire. The question of defendant's wealth had nothing to do with it. The question was the extent of the damages to the plaintiff below.

Another matter proved was the fact that the plaintiff below cried in the presence of the defendant; that he cried about his injury, and that the defendant below promised him employment and did not give it to him. Defendant was not sued on a promise to give employment or for a breach of such promise. The damage was the same to the plaintiff below and the defendant's liability was the same whether defendant had been guilty of a subsequent breach of promise of that character or not.

Another thing proved was the fact that the defendant failed to speak to the plaintiff. That, we think the court should have excluded. It was not a case where animosity or feeling on the part of the jury should have been stirred up on account of any bad treatment that the defendant below might have been guilty of after this injury was received; because plaintiff's right to recover, if he had any right at all, occurred the moment his hand was mashed, and his right to damages could not be increased or swollen by any contemptuous, ugly or unfriendly conduct on the part of the defendant thereafter.

We speak of these things because the case must be sent back to be retried, and I want to say in this connection that this

criticism is not directed against counsel for plaintiff below only; because there is some excuse and possibly some measure of justification for this line of inquiry to be found in the fact that counsel for defendant below had inquired whether this suit had not been begun without any demand or anything of the sort; and it seems that to excuse the fact that no previous demand had been made, counsel for plaintiff undertook to show that the parties were not on speaking terms and that therefore there was no opportunity offered for a previous demand. The whole matter on both sides should have been excluded. The case is not reversed on this point, but after consultation we deem it proper to say something about it so that if the case should come before us these same matters, or other like irrelevant matters may not again appear in the record.

In the motion for a new trial one of the assignments of error is that the verdict is against the weight of the evidence, and we are required by law to pass upon this assignment. In view of the fact that we intend to reverse this judgment and send the case back to be retried, I shall not discuss this question, but will simply say that a majority of the court are of the opinion that the court below erred in refusing to sustain the motion on this ground.

We find no other errors in the record that we regard worthy of mention or sufficiently prejudicial to require a reversal of the judgment, but on account of those pointed out, the judgment will be reversed and the case remanded for a new trial.

*James O. Troup,* for plaintiff in error.

*James & Beverstock,* for defendant in error.

HULL, J.

I concur with the rest of the court in the reversal of this judgment for the errors indicated in the opinion of Judge Parker, but I dissent in the opinion that the court of common pleas erred in refusing to set aside the verdict on the ground that it was against the weight of the evidence.

In my judgment, under the decision of the Supreme Court, it would have been an invasion of the province of the jury for the court of common pleas to have granted a new trial on that ground.